UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN C. ROSERO, | ) | CIVIL ACTION NO. 1:23-CV-1898 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| TROOPER JACOB PENHORWOOD, | ) | |
| *et al.*, | ) | |
| Defendants | ) | |

**MEMORANDUM OPINION**

## I.    INTRODUCTION

*Pro se* Plaintiff John C. Rosero brings this civil rights action against numerous employees of the Pennsylvania State Police ("PSP"). (Doc. 1). Plaintiff's claims arise out of a traffic stop that lead to his arrest, his vehicle being impounded and criminal charges against him. *Id.* On May 22, 2024, the parties consented to proceed before a United States Magistrate Judge. (Doc. 12). For the reasons described herein, Plaintiff's motion to take judicial notice (Doc. 21) will be denied and Defendants' motion to dismiss (Doc. 10) will be granted in part and denied in part.

## II.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiff initiated this case on November 15, 2023 with the filing of a complaint. (Doc. 1). As Defendants, he names:

(1)    PSP Trooper Jacob Penhorwood;

(2)    PSP Trooper Shane R. Dressler;

(3)    PSP Commissioner Colonel Robert Evanchik;

(4)     PSP Lieutenant Colonel Christopher L. Paris, Deputy Commissioner of Administration and Professional Responsibility;

(5)     PSP Major Wayne C. Kline, Director of the Bureau of Integrity and Professional Standards;

(6)     PSP Major Richard H. D'Ambrosio, Commander Area IV Bureau Director;

(7)     PSP Captain Bradley J. Getz, Troop J Lancaster Commander and Division Director.

(Doc. 1, ¶¶ 5-11). Penhorwood and Dressler will be discussed collectively as the "Individual Defendants," and Evanchik, Paris, Kline, D'Ambrosio, and Getz will be discussed collectively as the "Supervisory Defendants." Plaintiff sues Defendants in their individual capacities and in their official capacities insofar as he seeks injunctive relief. (Doc. 1, ¶ 107, 109).

Plaintiff alleges that on November 16, 2021, around 8 p.m., he was driving a vehicle northbound on Interstate 83 crossing from Maryland into Pennsylvania. (Doc. 1, ¶ 17). As he was driving, he passed a PSP vehicle in an emergency access lane in the middle of the interstate and alleges that within minutes the PSP vehicle went "into hot pursuit at excessive speed" to catch up to him. *Id.* The PSP vehicle was driven by Penhorwood who turned on his lights.[1] *Id.* Plaintiff immediately pulled over. (Doc. 1, ¶ 18).

---

[1] It appears that Dressler was in the PSP vehicle with Penhorwood.

Page 2 of 40

Penhorwood approached the vehicle and asked for Plaintiff's driver's license and whether the vehicle was insured. (Doc. 1, ¶ 18). Plaintiff produced his license and informed Penhorwood he was a resident of Maryland and his insurance policy provides a coverage grace period for additional vehicles for up to 30 days and that he had purchased coverage for the vehicle as he was in the process of buying it. *Id.* While retrieving his license from a handbag handed to him by the passenger, Penhorwood observed a prescription pill bottle. (Doc. 1, ¶ 20). Plaintiff alleges that from the beginning of their interaction, Penhorwood attempted to "engage Rosero into a confusing conversation regarding the use of prescription drugs and alcohol." (Doc. 1, ¶ 19). Plaintiff alleges that it quickly became clear Penhorwood's action were not based on probable cause but on racial profiling. (Doc. 1, ¶ 21). Plaintiff also alleges Penhorwood was trying to manipulate the situation to "create a false perception" that he could search Plaintiff's vehicle. (Doc. 1, ¶ 23). Penhorwood did not explain why he pulled Plaintiff over, but did state that no information had come back on the police car data terminal when the license plate was ran. (Doc. 1, ¶ 25).

Penhorwood directed Plaintiff to exit the vehicle without justification or explanation and told Plaintiff he and Dressler knew Plaintiff had drugs and to tell them where they were. (Doc. 1, ¶¶ 26, 58). Once Plaintiff was out of the vehicle, Penhorwood kept asking Plaintiff whether he was drinking or doing drugs, with Plaintiff answering that he does not drink or take illegal drugs. (Doc. 1, ¶ 28).

Plaintiff alleges Penhorwood's actions indicated that he expected to find illegal drugs or other contraband when searching the vehicle and Plaintiff overheard Dressler making statements that the vehicle is probably stolen, and that the license plate was paper, which turned out to be untrue. (Doc. 1, ¶¶ 29, 31). Plaintiff asked his passenger to get the title out of the glove box and give it to Penhorwood and Dressler. (Doc. 1, ¶ 30). Penhorwood and Dressler then contacted the individual listed on the title and Dressler confirmed the vehicle was registered in Virginia and in the process of being transferred to Plaintiff. (Doc. 1, ¶ 33). Plaintiff informed Penhorwood and Dressler that a dealer was inspecting the vehicle and working on the title transfer, and the passenger shared a document on her phone showing that Plaintiff had a valid insurance policy, but Dressler stated it would not do. (Doc. 1, ¶¶ 33, 34).

Penhorwood continued to ask Plaintiff about drugs and Plaintiff responded that they would find nothing if they searched the car. (Doc. 1, ¶ 59). Penhorwood then told Plaintiff to put his hands on the hood of the car and frisked Plaintiff. (Doc. 1, ¶ 36). Plaintiff realized Penhorwood was looking for an excuse to search the vehicle and informed him that searching or seizing the vehicle would be a Fourth Amendment violation and offered to have the vehicle towed to calm Penhorwood and Dressler's concerns. (Doc. 1, ¶ 37). Plaintiff was then coerced into doing a sobriety test. (Doc. 1, ¶ 38). When first asked to do the sobriety test, Plaintiff asked

for a lawyer, but Penhorwood told Plaintiff he was not entitled to one and handcuffed Plaintiff and indicated Plaintiff was under arrest. (Doc. 1, ¶¶ 39, 40). Plaintiff informed Penhorwood that denial of counsel is a civil rights violation, but Penhorwood disagreed. (Doc. 1, ¶ 40). Penhorwood stated if Plaintiff performed the sobriety test then he would remove the handcuffs and not arrest Plaintiff. (Doc. 1, ¶ 41). Plaintiff performed the test and passed, but Penhorwood placed handcuffs on him once again and placed him in the patrol vehicle. (Doc. 1, ¶ 42, 61, 62, 64). Plaintiff asked that the handcuffs be loosened as they were causing him pain, but Dressler told him they were loose enough and neither Penhorwood nor Dressler further addressed the issue. (Doc. 1, ¶ 43). Plaintiff then told Penhorwood and Dressler again that he was willing to have the car towed to his home and he did not give consent to towing or searching his vehicle and that a warrant would be necessary to do so, which Dressler disagreed with. (Doc. 1, ¶ 44).

Penhorwood then searched the vehicle, claiming it was an inventory search and found Plaintiff's prescription bottle. (Doc. 1, ¶ 45). Penhorwood had the vehicle towed to an impound lot after dumping out the handbag and "ransacking" the interior of the truck during the illegal search and took Plaintiff to PSP Headquarters based on their false and pretextual claim that Plaintiff was on something. (Doc. 1, ¶¶ 46, 50, 68). Plaintiff was confined in a holding cell and "did not participate in a DRE evaluation." (Doc. 1, ¶ 69, 70). Plaintiff alleges that Penhorwood and Dressler left

Plaintiff and spoke together, and it was during this discussion that they conspired to prosecute Plaintiff even though they lacked probable cause. (Doc. 1, ¶ 72, 78). Plaintiff alleges he was charged with DUI under "75 PA Vehicle Code []§ 3802(d)(2)" and "whatever else they could fabricate."[2] (Doc. 1, ¶ 78). Plaintiff has no previous DUI convictions. (Doc. 1, ¶ 81). Plaintiff alleges Dressler agreed with Penhorwood that Penhorwood would swear out a false affidavit of probable cause and file a false criminal complaint and Dressler would corroborate a false police report consistent with Penhorwood's affidavit and complaint, intentionally declaring Plaintiff had committed a crime when they had no evidence to so conclude. (Doc. 1, ¶ 83).

Plaintiff was detained by Penhorwood and Dressler from the initiation of the stop and was arrested and booked without being given his *Miranda* warnings. (Doc. 1, ¶ 53). Plaintiff was then transported to York County Central Booking around 9:40 p.m. and coerced into blood tests and being fingerprinted through threats of taking away his driving privileges if he failed to comply. (Doc. 1, ¶ 73). Plaintiff was then advised of his implied consent and "O'Connell warnings" before his blood was

---

[2] It is unclear what happened to this DUI charge. It does not appear on the Court of Common Pleas docket in Plaintiff's state court criminal case. *Commonwealth v. Rosero*, Docket No. CP-67-CR-2335-2022, York County Court of Common Pleas (https://ujsportal.pacourts.us/Report/CpDocketSheet?docketNumber=CP-67-CR-0002335-2022&dnh=VVkurVX5WQy7Otu6kFCkUg%3D%3D) (last accessed June 6, 2025).

drawn two hours after his vehicle was stopped and without his consent. (Doc. 1, ¶¶ 74, 75). Plaintiff's blood test results were described by Plaintiff's doctor and pharmacist "to be what they considered 'a low concentration and well within the results of therapeutic treatment[.]'" (Doc. 1, ¶ 86). Penhorwood was undeterred by this and still charged Plaintiff, motivated by the need to cover up his actions. (Doc. 1, ¶ 87). Before he left, Plaintiff was asked to sign a document stating he was charged with DUI and no other documents were given and no other charges were mentioned. (Doc. 1, ¶ 92).

Plaintiff was informed the vehicle could only be retrieved by the owner unless he could show valid tags and registration. (Doc. 1, ¶ 52). Plaintiff was never given any paperwork regarding the search or seizure of his vehicle. (Doc. 1, ¶ 67). The vehicle was retrieved the next morning with the handbag and its contents after Plaintiff paid the towing and storage charges. (Doc. 1, ¶¶ 48, 51, 54).

Penhorwood did not withdraw the charges or show up at the preliminary hearing on February 2, 2022. (Doc. 1, ¶ 88). The judge granted a continuance because Penhorwood was on military training, which was an *ex parte* communication. Plaintiff alleges that the decision to continue was made without regard for his right to a speedy trial. (Doc. 1, ¶ 88). Plaintiff requested the case be dismissed because he had not been properly served and so jurisdiction had not been established and the charges were filed much later than the five days required under

Pennsylvania law. (Doc. 1, ¶ 89). The judge ended the session and left the courtroom. *Id.*

Plaintiff alleges Penhorwood was angry because he reported the illegal stop and so Penhorwood added additional charges to the complaint after a month had passed in retaliation for being reprimanded. (Doc. 1, ¶ 93). "Penhorwood left everything 'pending,' causing the charges to either be sent to Court which is what the prosecutor said was one of the Plaintiff's choices or allow Penhorwood more time to see if the Plaintiff would pursue filing a lawsuit for violation of his civil rights[.]" (Doc. 1, ¶ 94).

Pennsylvania law allows drivers to cure a registration violation by bringing the registration to the police within five days of being charged. (Doc. 1, ¶ 55). Plaintiff did so, bringing the required information to the PSP barracks, they day after his arrest, where he also spoke with the officer in charge to file a complaint about the previous night's interaction and elaborated on how he was racially profiled. (Doc. 1, ¶¶ 55, 56).

Plaintiff alleges PSP has a consistent history of disparate treatment. (Doc. 1, ¶ 22). Plaintiff avers that the stop of his vehicle was pretextual, unjustified and based on profiling, his status as a Hispanic male, the dealer license plate and his Maryland license and residency. (Doc. 1, ¶ 27). Plaintiff alleges PSP has a history of falsely

reporting field test results and this behavior was condoned if not encouraged. (Doc. 1, ¶ 84).

Plaintiff alleges that as a result of the false charges against him, he was forced to change jobs and endured cruel and unusual punishment as a result of the outrageous behavior he was subjected to by Penhorwood and Dressler. (Doc. 1, ¶ 85). He alleges that under Pennsylvania law, even when found not guilty, a DUI charge remains a part of a defendant's criminal record unless or until expunged by court order and so he will have to incur more legal fees and costs in an attempt to get the charge expunged. (Doc. 1, ¶ 95). Plaintiff alleges he suffered a loss of liberty, invasion of his privacy and freedom of association, damage to his reputation, emotional distress and anguish, loss of life's pleasures, loss of employment, income and "shortening of economic horizons" and legal fees and costs. (Doc. 1, ¶ 97).

Plaintiff brings 15 claims:

I.    A 42 U.S.C. § 1983 ("§ 1983") false arrest claim against Penhorwood and Dressler;

II.   A § 1983 false imprisonment claim against Penhorwood and Dressler;

III.  A § 1983 malicious prosecution claim against Penhorwood and Dressler;

IV.   A § 1983 conspiracy claim against Penhorwood and Dressler;

V.    A § 1983 supervisory liability claim against the Supervisory Defendants;

VI.   A § 1983 equal protection claim against all Defendants;

VII.     A § 1983 failure to intervene claim against Dressler;

VIII.    § 1983 unreasonable seizure and procedural due process claims against all Defendants;

IX.     A 42 U.S.C. § 1981 "Denial of Equal Rights Under The Law" claim against all Defendants;

X.     A 42 U.S.C. § 1985 conspiracy claim against all Defendants;

XI.    42 U.S.C. §§ 1985 and 1986 "Failure To Prevent Actions" claim against all Defendants;

XII.    A state law false arrest and false imprisonment claim against Penhorwood and Dressler;

XIII.   A state law malicious prosecution claim against Penhorwood and Dressler;

XIV.   A state law civil conspiracy claim against Penhorwood and Dressler; and

XV.    A claim for state constitutional violations.

(Doc. 1, ¶¶ 110-242).

As relief Plaintiff requests a court order removing Plaintiff's fingerprints and blood test records "from the record." (Doc. 1, ¶ 15). Plaintiff also requests all fees related to this case including towing charges, vehicle storage fees and the costs of the blood tests. *Id.* Plaintiff requests compensatory damages in excess of $150,000.00 per claim, punitive damages in excess of $150,000.00 per claim, reasonable attorney's fees and costs, and an order enjoining Defendants from engaging in the future in the same conduct identified in the complaint and requiring

they take appropriate remedial measures to preclude future illegal conduct. (Doc. 1, pp. 60-61).

To his complaint, Plaintiff attaches a copy of removal petition he filed in an attempt to remove his state court criminal case to federal court. (Doc. 1-1).

On May 20, 2024, Defendants filed a motion to dismiss (Doc. 10) and brief in support (Doc. 11). On June 20, 2024, Plaintiff filed a brief in opposition. (Doc. 20). On July 3, 2024, Defendants filed a reply brief. (Doc. 22).

On June 27, 2020, Plaintiff filed a motion to take judicial notice. (Doc. 21). On July 11, 2024, Defendants filed a brief in opposition. (Doc. 23).

## III.   LEGAL STANDARD FOR MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE

Rule 8 of the Federal Rules of Civil Procedure explains that to state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief."[3] This standard "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[4] Thus, a complaint that contains only "labels and conclusions," or a "formulaic recitation of the elements of a cause of action" is insufficient.[5]

---

[3] Fed. R. Civ. P. 8(a)(2).
[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).
[5] *Id.*

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted."[6] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[7] Facial plausibility is achieved "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[8] Plausibility does not require probability but the litigant must show "more than a sheer possibility that a defendant has acted unlawfully."[9] Facts "merely consistent with" liability do not satisfy this standard.[10] To state a claim, a plaintiff must plead "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]."[11] In addition, "[d]etermining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[12] ¡

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly

---

[6] Fed. R. Civ. P. 12(b)(6).

[7] *Iqbal*, 556 U.S. at 678.

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) internal quotation marks omitted)).

[12] *Iqbal* at 679.

authentic documents if the complainant's claims are based upon these documents."[13] The "court may consider the facts alleged on the face of the complaint, as well as documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[14] Further, the court accepts the complaint's factual allegations as true, but the court does not accept a plaintiff's legal conclusions.[15] Courts also must view the factual allegations in the light most favorable to the plaintiff.[16]

The federal pleading standard just described requires that district courts conduct the following analysis when addressing a motion to dismiss a complaint:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [*Iqbal*, 129 S.Ct. at 1949]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Phillips*, 515 F.3d at 234–35.[17]

---

[13] *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

[14] *Bishop v. Univ. of Scranton*, No. 3:22-CV-01831, 2025 WL 823253, at *2 (M.D. Pa. Mar. 14, 2025) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)) (internal quotation marks omitted).

[15] *Iqbal*, 556 U.S. at 678. ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

[16] *Mator v. Wesco Distribution, Inc.*, 102 F.4th 172, 178 (3d Cir. 2024).

[17] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

A *pro se* litigant, however, is entitled to have their complaint liberally construed. This requires that we hold the complaint to a less stringent standard than a pleading drafted by a licensed attorney.[18] "Liberal construction of *pro se* pleadings means paying attention to what the litigant has alleged and using common sense."[19] The Court may "apply the relevant legal principle even when the complaint has failed to name it," but cannot supply what plaintiff has not alleged or imagine that unpleaded facts exist.[20]

## IV.    ANALYSIS

### A.    PLAINTIFF'S MOTION TO TAKE JUDICIAL NOTICE

Plaintiff has filed a motion pursuant to Federal Rule of Evidence 201 requesting that the Court take judicial notice of ten separate points. (Doc. 21). Although he did not file a separate brief in support as required by the Local Rules, Plaintiff provides his arguments in his motion which, given Plaintiff's *pro se* status, the Court will accept. *Id.* Defendants oppose the motion. (Doc. 23).

> Generally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Aubrey v. City of Bethlehem, Fire Dep't*, 466 F. App'x 88, 91 (3d Cir. 2012). If other

---

[18] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[19] *Gindraw v. Sanford*, No. 3:24-CV-65-KAP, 2024 WL 3179781, at *2 (W.D. Pa. June 26, 2024).

[20] *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)); *Gindraw*, 2024 WL 3179781, at *2.

matters are considered, then the motion must be treated as one for summary judgment, providing for additional protections for plaintiff. Fed. R. Civ. P. 12(b)(d). In deciding motions to dismiss, courts may consider "matters incorporated by reference or integral to the claim [and] items subject to judicial notice." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). Additionally, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

The judicial notice rule allows the court to "take judicial notice of public records." *Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000). Federal Rule of Evidence 201(b) states: "The Court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Federal Rule of Evidence 201(c)(2) further explains that a court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). Upon judicial notice, the document "may only be considered for the limited purpose of showing that a particular statement was made by a particular person" and not "for the truth of the matters purportedly contained within those documents." *Oran*, 226 F.2d at 289 (citations omitted). For a document to be subject to judicial notice, it must not be "reasonably subject to dispute." *Victaulic Co. v. Tieman*, 499 F.3d 227, 236 (3d Cir. 2007). "Concerns regarding the authenticity or completeness of a document are the types of concerns that render a document reasonably subject to dispute." *Ryanair DAC v. Booking Holdings, Inc.*, 2022 WL 13946243, at *3 (D. Del. Oct. 24, 2022).[21]

---

[21] *Hasson v. FullStory, Inc.*, No. 2:22-CV-1246, 2023 WL 4727619, at *1 (W.D. Pa. July 25, 2023).

i.    *Requests for Notice of Law*

Plaintiff first requests that the Court "take Judicial Notice and Acknowledge that the Removal Petition is incorporated by reference as stated in the Complaint." (Doc. 21, ¶ 1). As Defendants argue, whether a document attached to a complaint can be considered on a motion to dismiss is a question of law.[22] (Doc. 23, p. 3). Second, Plaintiff requests the Court "take Judicial Notice that the Plaintiff invokes his title VI standing to Abrogate the States [sic] eleventh Amendment Immunity." (Doc. 21, ¶ 2). Whether Plaintiff has standing and thus this Court has jurisdiction over his claims is a question of law. Plaintiff's fifth request asks the Court to find that "Jurisdiction is proper to address injury as a result of Defendant's [sic] fraud, concealment of evidence and for bringing charges in bad faith and the States [sic] failure to provide constitutional protections baring res judicata and abstention." (Doc. 21, ¶ 5). Whether the Court has jurisdiction over Plaintiff's claims is a question of law.[23] Plaintiff's sixth request is that the Court take notice that Pennsylvania "Title 75 Chapter 13[] [p]rovides exemptions for registration of vehicles for out of state residents and for vehicles using dealer plates." (Doc. 21, ¶ 6). This is a request for the Court to take judicial notice of Pennsylvania law. Seventh, Plaintiff requests the Court "take Judicial Notice that it is undisputed that the Criminal Complaint does

---

[22] *S.S. v. Woodward Pennsylvania, LLC*, No. 4:22-CV-01407, 2023 WL 4673272, at *3 (M.D. Pa. July 20, 2023).

[23] *See* 28 U.S.C. §§ 1331-1332.

not state valid probable cause to justify a traffic stop under the Fourth Amendment or PSP policy." (Doc. 21, ¶ 7). Whether probable cause existed is clearly a question of law and not fact. Plaintiff's first, second, fifth, sixth and seventh requests all ask the Court to take notice of law and not facts. All of these requests except for Plaintiff's sixth request are effectively requests that the Court make a finding of law. Federal Rule of Evidence 201 allows the Court to take notice of facts, not law. Federal Rule of Evidence 201 is a not a vehicle by which a plaintiff may obtain a finding of law. For these reasons, Plaintiff's first, second, fifth, sixth and seventh requests will be denied.

### ii.    *Miscellaneous Requests*

Plaintiff's third request is that Defendants consider the authority of this Court to enjoin state action for constitutional violations. (Doc. 21, ¶ 3). This is not a request for the Court to take judicial notice of a fact as provided for in Federal Rule of Evidence 201. Accordingly, this request will be denied.

Plaintiff's fourth request is that the Court "take Judicial Notice that Plaintiff requests that the Court honor the causes of action and declaratory relief stated in the removal Petition." (Doc. 21, ¶ 4). Plaintiff then states that he "seeks to add a cause of action" to his complaint. *Id.* A motion for judicial notice is not the proper method for requesting leave to file an amended complaint. Therefore, Plaintiff's fourth request will be denied.

Plaintiff's eighth request is that the Court "acknowledge regional media articles reporting on The PSP's alleged disparate treatment of Hispanics and Blacks over many years." (Doc. 21, ¶ 8). It is true that "courts have taken judicial notice of newspaper articles or certain facts contained within them, [but] there is no reason to do so here. That these articles were, in fact, published is not at all relevant to the[] motion[], and the statements contained in the articles themselves are hardly without dispute."[24] Even if the Court did take judicial notice of the articles, it would be to show that the articles were in fact written, not for the truth of anything contained within them.[25] We will therefore deny Plaintiff's eighth request.

Plaintiff's ninth request asks the Court to take judicial notice of the availability of mobile camera footage of the traffic stop related to this case. (Doc. 21, ¶ 9). Defendants dispute this assertion, arguing that they have not ascertained what, if any, footage of the incident is available. (Doc. 23, p. 5). Accordingly, Plaintiff has not shown that the fact that mobile video footage exists is not subject to reasonable dispute and this request will be denied.

Finally, Plaintiff's tenth request asks the Court to take judicial notice that he "is representing himself pro se due to reasons beyond his control." (Doc. 21, ¶ 10). It is unclear how this fact is relevant and Plaintiff provides no argument suggesting

---

[24] *Hynoski v. Columbia Cnty. Redevelopment Auth.*, 941 F.Supp.2d 547, 557 (M.D. Pa. 2013).

[25] *Hasson*, 2023 WL 4727619, at *1.

that the fact is not subject to reasonable dispute because it is "generally known within [this Court's] territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[26] Therefore, Plaintiff's tenth request will be denied.

For the reasons described above, Plaintiff's motion to take judicial notice will be denied in its entirety.

### B.    PLAINTIFF'S FALSE ARREST AND FALSE IMPRISONMENT CLAIMS

Plaintiff brings false arrest and false imprisonment claims against the Individual Defendants pursuant to § 1983 and pursuant to Pennsylvania state law. (Doc. 1, ¶¶ 110-127, 230-232). Defendants argue that Plaintiff's guilty plea to crimes arising out of the arrest bars his false arrest and false imprisonment claims. (Doc. 11, pp. 4-5). In response, Plaintiff argues that Defendants have the burden of proving probable cause, that admitting to non-criminal violations does not provide probable cause, nor does an Automated License Plate Readers ("ALPR") hit. (Doc. 20, pp. 2-4). Plaintiff cites to the 10th Circuit case *United States v. Pena-Montes* in support of his assertion that the Individual Defendants should have terminated the stop. *Id*. Defendants reply that Plaintiff has the burden of showing a lack of probable cause, that Plaintiff pleaded guilty to two crimes, not non-criminal violations, that no ALPR

---

[26] Fed. R. Evid. 201(b).

was used on the night of the arrest, and that *Pena-Montes* is inapposite. (Doc. 22, pp. 3-5). We agree with Defendants.

For § 1983 purposes, "[f]alse arrest and false imprisonment claims will necessarily fail if probable cause existed for any one of the crimes charged against the arrestee,"[27] and "a guilty plea–even one for a lesser offense–does not permit a later assertion of no probable cause."[28] Therefore, under § 1983, a guilty plea to one of the charges precludes a later action for false arrest or false imprisonment.[29] "[U]nder Pennsylvania law, false arrest is synonymous with false imprisonment"[30] and "[a] guilty plea or conviction conclusively establishes probable cause, precluding a cause of action for false arrest."[31]

First, Plaintiff is incorrect that the defendant in a false arrest claim bears the burden of proving probable cause; it is the plaintiff's burden to show that the police lacked probable cause.[32] Second, Plaintiff's contention regarding ALPR hits not

---

[27] *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020) (quoting *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 477 (3d Cir. 2016)) (internal quotation marks omitted).

[28] *Beam v. Twp. of Pemberton*, No. 19-20380, 2023 WL 2496460, at *26 (D.N.J. Mar. 14, 2023) (quoting *Walker v. Clearfield Cnty. Dist. Atty.*, 413 F. App'x 481, 484 (3d Cir. 2011)) (internal quotation marks omitted).

[29] *Barreto v. Diaz*, No. 1:21-CV-01390, 2023 WL 6216714, at *8 (M.D. Pa. Sept. 25, 2023); *Beam*, 2023 WL 2496460, at *26.

[30] *Shedrick v. Watson*, 310 A.3d 1266, *2 (Pa. Commw. Ct. 2023) (citing *Gagliardi v. Lynn*, 285 A.2d 109, 111 (Pa. 1971)).

[31] *Moon Twp. v. Papa*, 295 A.3d 743, *6 (Pa. Commw. Ct. 2023) (citing *McGriff v. Vidovich*, 699 A.2d 797, 800 (Pa. Commw. 1997)).

[32] *Fields v. City of Pittsburgh*, 714 F. App'x 137, 140 (3d Cir. 2017).

constituting probable cause is irrelevant to this case. The criminal complaint, which Plaintiff attaches to his complaint, shows that the Individual Defendants ran Plaintiff's displayed registration through their Mobile Data Terminal and determined that the plate did not come back to a valid registration in Pennsylvania. (Doc. 1-1, p. 28). Thus, it does not matter whether an ALPR hit creates probable cause as it was not an ALPR hit that caused the Individual Defendants to pull Plaintiff over. Third, as Defendants argue, *Pena-Montes* is inapposite to this case. In *Pena-Montes*, the officer initiated the traffic stop based on the reasonable belief that the vehicle had no license plate, but, upon pulling the car over he observed there was a license plate.[33] The officer nevertheless continued to detain and question the vehicle's occupants.[34] The Tenth Circuit concluded that the officer "lacked a particularized and objective basis for suspecting legal wrongdoing" once he observed there was in fact a license plate because "his sole cause for suspicion was dispelled."[35] In this case, the Individual Defendants' cause for suspicion was not. Thus, *Pena-Montes* is inapposite to this case.

While Plaintiff asserts, and it may be true, that admitting to non-criminal violations does not provide probable cause, that is irrelevant to this case. Here,

---

[33] *United States v. Pena-Montes*, 589 F.3d 1048, 1050 (10th Cir. 2009).

[34] *Id.*

[35] *Id.* at 1057-58 (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)) (internal quotation marks omitted).

Plaintiff pleaded guilty to two criminal summary offenses stemming from the traffic stop he complains of.[36] It is clear that under both § 1983 and Pennsylvania law, Plaintiff's guilty pleas preclude his false arrest and false imprisonment claims.[37] Accordingly, Defendants' motion to dismiss Plaintiff's § 1983 and Pennsylvania state law false arrest and false imprisonment claims will granted.

### C. PLAINTIFF'S MALICIOUS PROSECUTION CLAIM

Plaintiff brings a malicious prosecution claim against the Individual Defendants pursuant to § 1983 and pursuant to Pennsylvania state law. (Doc. 1, ¶¶ 128-140, 233-234). The parties do not differentiate the two claims in their briefing and so we do not here either. Initially, Defendants argued that because Plaintiff pleaded guilty to two summary criminal offenses, his malicious prosecution claims were barred as to all of his criminal charges. (Doc. 11, pp. 4-5). However, in their reply brief, Defendants acknowledge that in *Chiaverini v. City of Napoleon, Ohio*, the Supreme Court found that a Fourth Amendment malicious prosecution claim

---

[36] *Commonwealth v. Rosero*, Docket No. CP-67-CR-2335-2022, York County Court of Common Pleas (https://ujsportal.pacourts.us/Report/CpDocketSheet?docketNumber=CP-67-CR-0002335-2022&dnh=VVkurVX5WQy7Otu6kFCkUg%3D%3D) (last accessed June 6, 2025). The Court takes judicial notice of the public docket in Plaintiff's state court criminal matter. *See Moore v. Pennsylvania*, No. 22-1945, 2022 WL 7375509 at * 2 (3d Cir. 2022) (citing *Orabi v. Att'y Gen.*, 738 F.3d 535, 537 n.1 (3d Cir. 2014)).

[37] *Harvard*, 973 F.3d at 199; *Beam*, 2023 WL 2496460, at *26; *Shedrick*, 310 A.3d at *2; *Moon Twp.*, 295 A.3d at *6.

could potentially succeed where a baseless charge is accompanied by a valid charge.[38] (Doc. 22, p. 2).

Plaintiff's guilty pleas preclude him from bringing malicious prosecution claims relating to the two crimes he pleaded guilty to, the unauthorized use of a vehicle registration or plate and the failure to produce a vehicle registration.[39] However, those guilty pleas do not preclude malicious prosecution claims stemming from his DUI charge. Therefore, Defendants' motion to dismiss Plaintiff's § 1983 and Pennsylvania law malicious prosecution claims will be granted insofar as Plaintiff brings malicious prosecution claims stemming from the two summary criminal offenses he pleaded guilty to and denied insofar as Plaintiff brings malicious prosecution claims stemming from his DUI charge.

## D.    PLAINTIFF'S FAILURE TO INTERVENE CLAIM

Plaintiff brings a claim against Dressler asserting that he failed to intervene in Plaintiff's unconstitutional arrest, unconstitutional imprisonment and malicious prosecution. (Doc. 1, ¶¶ 185-191). Defendants argue this claim should be dismissed because all of the substantive claims underlying the failure to intervene claim should be dismissed. Plaintiff disagrees. It is well established that a plaintiff "cannot state a claim against any individual officer for failure to intervene where he cannot state an

---

[38] *Chiaverini v. City of Napoleon, Ohio*, 602 U.S. 556, 562 (2024).

[39] *Morrison v. City of Jersey City*, No. 19-20369 (JXN) (AME), 2024 WL 4318601, at *8 n.8 (D.N.J. Sept. 26, 2024).

underlying constitutional claim."[40] As explained above, Plaintiff cannot state a claim for false arrest, false imprisonment, or malicious prosecution insofar as it relates to the two summary criminal offenses he pleaded guilty to. Therefore, Plaintiff's failure to intervene claims against Dressler alleging his failure to intervene in Plaintiff's false arrest, false imprisonment, and malicious prosecution on his two summary criminal offenses must be dismissed. However, Plaintiff's malicious prosecution claim relating to his DUI charge survives Defendants' motion. Defendants' only argument for the dismissal of Plaintiff's failure to intervene claim is that the dismissal of all substantive claims requires dismissal of all derivative claims. Because Plaintiff's malicious prosecution claim relating to his DUI charge will not be dismissed, neither will his failure to intervene claim against Dressler insofar as it is brought for Dressler's failure to intervene in Plaintiff's malicious prosecution on the DUI charge. Accordingly, Defendants' motion will be granted to the extent it seeks dismissal of Plaintiff's failure to intervene claim against Dressler relating to Plaintiff's false arrest, false imprisonment, and malicious prosecution on his two summary criminal offenses claims and denied to the extent it seeks dismissal of the failure to intervene claim relating to Plaintiff's alleged malicious prosecution on the DUI charge.

---

[40] *Milligan v. Jacob*, 826 F. App'x 256, 257 (3d Cir. 2020).

E.    PLAINTIFF'S UNREASONABLE SEIZURE AND PROCEDURAL DUE
PROCESS CLAIMS

Plaintiff brings Fourth Amendment unreasonable seizure and Fourteenth

Amendment procedural due process claims against all Defendants relating to the

towing and impounding of his car after the traffic stop. (Doc. 1, ¶¶ 192-196).

Defendants argue that, pursuant to Pennsylvania law, when police discover a vehicle

is being driven without a valid registration, they are required to immobilize the

vehicle or direct the vehicle be towed and stored if in the interest of public safety.

(Doc. 11, p. 7). Specifically, Defendants argue,

> Dr. Rosero brings a Fourth Amendment claim based on the
> impoundment of the vehicle he was driving that day. *See* ECF No. 1,
> Count VIII. But as a matter of law, that impoundment was a valid
> exercise of Defendants' community-caretaking function.
>
> "The authority of police to seize and remove from the streets vehicles
> impeding traffic or threatening public safety and convenience is beyond
> challenge." *S. Dakota v. Opperman*, 428 U.S. 364, 369 (1976). The
> legality of such impoundments is further supported when they are
> conducted to "standardized criteria"—even if that criteria "g[i]ve[s]
> police officers discretion to choose between impounding" and another
> option. *Colorado v. Bertine*, 479 U.S. 367, 375 (1987); see also *United
> States v. Smith*, 522 F.3d 305, 314 (3d Cir. 2008) ("[T]o satisfy the
> Fourth Amendment[,] a community caretaking impoundment must be
> based on (1) a reasonable standard police procedure governing
> decisions on whether to impound vehicles and (2) and the police must
> follow the procedure in the case involved.").
>
> Dr. Rosero concedes that he was driving without a registration on the
> day his vehicle was impounded. See ECF No. 1 ¶¶ 56–57 (noting that
> Dr. Rosero did not obtain a registration until "[t]he following morning,"
> which then allowed him to "cure [his] registration violation[]"). Indeed,
> he pled guilty to doing just that. *See* Ex. 1. And in Pennsylvania, when

police discover that a vehicle is being operated without a valid registration, they **must** either "immobilize" the vehicle or "direct that the vehicle be towed and stored" if that is "in the interest of public safety." 75 Pa. C.S. § 6309.2(a)(2). In light of Dr. Rosero's concessions about the location of his vehicle at the time of the stop, see ECF No. 1 ¶¶ 46–47 (noting that the vehicle was "on the shoulder of Interstate 83"), he cannot seriously challenge the Defendants' decision to move it away from traffic. *See Mawson v. Pittston City Police Dep't*, 2017 WL 4324840, at *10 (M.D. Pa. Jan. 20, 2017) ("In performing [their] community caretaking role, police are expected to . . . prevent potential hazards from materializing[.]").

So Count VIII of Dr. Rosero's Complaint should be dismissed. Cf. *Serrano-Bey v. Muvha*, 2024 WL 665184, at *7 (E.D. Pa. Feb. 16, 2024) (dismissing Fourth Amendment claim because vehicle was towed pursuant to § 6309.2(a)(2)); *Perry v. Faddis*, 2023 WL 144432, at *5 n.11 (E.D. Pa. Jan. 10, 2023) (same).

(Doc. 11, pp. 6-7) (footnote omitted) (emphasis in original). Defendants also assert

that to the extent Plaintiff brings a procedural due process claim based on the

impoundment, he fails to state a claim because he does not explain how the post-

deprivation procedures were insufficient to provide due process. *Id*. at n.3. Plaintiff

asserts that the community caretaking exception is an issue for the jury. (Doc. 20, p.

7). He also alleges that PSP did not follow policy as they did not fill out an inventory

form or seize items in plain view. *Id.* He cites to cases he believes support his

position. In response, Defendants reiterate their original arguments and argue the

cases Plaintiff cites to are inapplicable to this case.

Defendants' only argument relies upon the applicability of 75 Pa. C.S. § 6309.2(a)(2) to the facts of this case. However, at this stage of the proceedings it is not clear whether that law applies. 75 Pa. C.S. § 6309.2(a)(2) provides,

> If a motor vehicle or combination for which there is no valid registration or for which the registration is suspended, as verified by an appropriate law enforcement officer, is operated on a highway or trafficway of this Commonwealth, the law enforcement officer shall immobilize the motor vehicle or combination or, in the interest of public safety, direct that the vehicle be towed and stored by the appropriate towing and storing agent pursuant to subsection (c), and the appropriate judicial authority shall be so notified.

While Plaintiff did plead guilty to a registration related offense, he did not plead guilty to driving an unregistered vehicle. 75 Pa. C.S. § 1301 provides, "[n]o person shall drive or move and no owner or motor carrier shall knowingly permit to be driven or moved upon any highway any vehicle which is not registered in this Commonwealth unless the vehicle is exempt from registration." 75 Pa. C.S. § 1311 provides, [e]very registration card shall, at all times while the vehicle is being operated upon a highway, be in the possession of the person driving or in control of the vehicle or carried in the vehicle and shall be exhibited upon demand of any police officer." Plaintiff was charged and pleaded guilty under 75 Pa C.S. § 1311 for failure to provide a signed registration card upon demand, not under § 1301 for operating a vehicle without a valid registration.[41] His pleading guilty to that summary offense

---

[41] *Commonwealth v. Rosero*, Docket No. CP-67-CR-2335-2022, York County

does not provide support to Defendants' argument. Plaintiff specifically alleges in his complaint that "Dressler verified that the vehicle was in fact owned by the person listed on the title and that the vehicle was registered in Virginia . . . ." (Doc. 1, ¶ 33). Taking this as true and in the light most favorable to Plaintiff, 75 Pa. C.S. § 6309.2(a)(2) does not appear to apply because the vehicle was registered in another state. Defendants' argument for dismissal relies upon the applicability of 75 Pa. C.S. § 6309.2(a)(2); they do not make other arguments as to why the seizure satisfied the Fourth Amendment. Therefore, as 75 Pa. C.S. § 6309.2(a)(2) does not appear to apply, Defendants' motion to dismiss Plaintiff's Fourth Amendment seizure claim relating to the impounding of his vehicle will be denied.

While not well defined, it appears Plaintiff may be bringing a Fourteenth Amendment procedural due process claim relating to the impoundment of his car. Plaintiff asserts that the day after his arrest he "acquired the vehicle from the impound lot." (Doc. 1, ¶ 54, 48, 51). As Defendants argue, Plaintiff does not allege how the post-deprivation procedures that allowed him to retrieve his vehicle did not provide him with due process. Accordingly, Defendants' motion will be granted to

---

Court of Common Pleas
(https://ujsportal.pacourts.us/Report/CpDocketSheet?docketNumber=CP-67-CR-0002335-2022&dnh=VVkurVX5WQy7Otu6kFCkUg%3D%3D)
(last accessed June 6, 2025).

the extent it seeks dismissal of Plaintiff's Fourteenth Amendment procedural due process claim.

### F.    PLAINTIFF'S EQUAL PROTECTION AND 42 U.S.C. § 1981 CLAIMS

Plaintiff brings a Fourteenth Amendment selective enforcement equal protection claim pursuant to § 1983 and a claim pursuant to 42 U.S.C. § 1981. (Doc. 1, §§ 173-184, 197-211). Plaintiff alleges he was the target of purposeful discrimination based on his ethnicity and race. (Doc. 1, ¶ 182). Defendants argue that Plaintiff has not alleged any similarly situated individuals who were not arrested or charged in circumstances similar to his. (Doc. 11, p. 8). They argue that Plaintiff uses boilerplate language and simply states he was treated differently than similarly situated white individuals and that his generalized assertions about racial discrimination and constitutionally abusive practices are insufficient to show his entitlement to relief. (Doc. 11, p. 9). In response, Plaintiff argues that Third Circuit precedent dictates that similarly situated does not mean identically situated, that the removal petition attached to his complaint demonstrates racial discrimination based on verifiable facts and that he intends to use publicly available statistical data that indicates PSP searches vehicles belonging to individuals of color more often than whites. (Doc. 20, pp. 9-10). In response, Defendants argue that even to the extent Plaintiff need not identify someone identically situated, he has identified no comparators, that the removal petition references a handful of other situations, none

of which help him state his selective enforcement claim, and that statistics regarding vehicle searches are not relevant to Plaintiff's claim that alleges racially discriminatory arrest and prosecution. (Doc. 22, p. 10). We agree with Defendants.

A selective enforcement equal protection claim requires a Plaintiff to show "(1) that he was treated differently from other similarly situated individuals, and (2) that this selective treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor . . . or to prevent the exercise of a fundamental right."[42] "Persons are similarly situated under the Equal Protection clause when they are alike in all relevant respects."[43] The Third Circuit has "held that similarly situated does not mean identically situated."[44] Here, however, Plaintiff does not, in either his complaint or the removal petition attached thereto, identify any similarly situated individuals who were treated differently from him. First, as Defendants argue, two of Plaintiff's 'examples' in the removal petition, *United States v. Payano* and *Commonwealth v. Glenn*, do not involve any claims of selective enforcement or discriminatory action generally.[45] Second, Plaintiff's citation to *Ramos v. Summa*

---

[42] *Phillips v. Weinman*, No. 25-CV-0171, 2025 WL 1436012, at *3 (E.D. Pa. May 19, 2025) (quoting *Dique v. N.J. State Police*, 603 F.3d 181, 184 n.5 (3d Cir. 2010)) (internal quotation marks omitted).

[43] *Harvard*, 973 F.3d at 205 (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)) (internal quotation marks omitted).

[44] *Harvard*, 973 F.3d at 205 (quoting *Bennun v. Rutgers State Univ.*, 941 F.2d 154, 178 (3d Cir. 1991)) (internal quotation marks omitted).

[45] *United States v. Payano*, 930 F.3d 186 (3d Cir. 2019); *Commonwealth v. Glenn*, 233 A.3d 842 (Pa. Super. Ct. 2020).

does not provide an example of a similarly situated individual who was treated differently than Plaintiff based on their race or ethnicity.[46] Instead, it, at best, provides an example of someone of the same race or ethnicity of Plaintiff being treated the same as Plaintiff. Finally, as Defendants argue, Plaintiff's 'example' of a white motorist who was found "very confused" and walking along the Pennsylvania Turnpike, where he had abandoned his county-issued car does not provide a similarly situated comparator. (Doc. 1-1, p. 8). Plaintiff was not found confused or walking along the side of a Turnpike, highway or freeway, nor did he abandon a vehicle on the side of the road. Further, Plaintiff's description of this 'example' in the removal petition indicates that it was not the white motorists' race or ethnicity at issue, but rather his status as a government official. (Doc. 1-1, pp. 8-9). Therefore, this 'example' does not identify an individual similarly situated to Plaintiff. Plaintiff's assertion that he intends to use publicly available statistical data showing that PSP searches vehicles belonging to individuals of color more often than whites is unavailing. (Doc. 20, p. 10). As the Supreme Court has noted, raw statistics "say nothing about . . . *similarly situated defendants*."[47]

The rest of Plaintiff's allegations in his complaint regarding similarly situated individuals are boilerplate conclusions that "he was treated differently than similarly

---

[46] *Ramos v. Summa*, No. 5:16-CV-2765 (E.D. Pa.).

[47] *United States v. Bass*, 536 U.S. 862, 864 (2002) (emphasis in original).

situated white persons" and that Penhorwood and Dressler "treated similarly situated individuals outside of the protected class differently[.]" (Doc. 1, ¶¶ 175, 204). But, "[w]hen alleging the existence of similarly situated individuals, plaintiffs cannot use allegations . . . that amount to nothing more than 'conclusory, boilerplate language' to show that he may be entitled to relief, and bald assertion[s] that other[s] . . . were treated in a dissimilar manner will not survive dismissal."[48] Plaintiff's boilerplate conclusions are therefore not enough to survive Defendants' motion to dismiss.

As to Plaintiff's claim pursuant to 42 U.S.C. § 1981, "42 U.S.C. § 1981 prohibitions against discrimination are coextensive with those of the Equal Protection Clause."[49] Accordingly, because Plaintiff's § 1983 equal protection claim fails, so too does Plaintiff's § 1981 claim.[50] For these reasons, Defendants' motion will be granted insofar as it seeks dismissal of Plaintiff's Fourteenth Amendment equal protection claim pursuant to § 1983 and his claim pursuant to § 1981.

### G. PLAINTIFF'S STATE CONSTITUTIONAL CLAIMS

Plaintiff also brings a claim for "State Constitutional Violations." (Doc. 1, ¶¶ 238-242). Plaintiff does not specifically identify which portions of the Pennsylvania

---

[48] *Blanchard v. Amin*, No. 3:23-CV-159, 2024 WL 436341, at *14 (M.D. Pa. Feb. 5, 2024) (quoting *Young v. New Sewickley Twp.*, 160 F. App'x 263, 266 (3d Cir. 2005)) (internal quotation marks omitted) (last two alternations in original).

[49] *Doe ex rel. Doe v. Lower Merion Sch. Dist.*, 665 F.3d 524, 557 (3d Cir. 2011).

[50] *Id.*

Constitution he brings his claims under and only generally asserts that Defendants' conduct was violative of "the cognate provisions of the Pennsylvania Constitution[.]" (Doc. 1, ¶ 239). Defendants argue that to the extent Plaintiff seeks money damages as relief for this claim, the claim must be dismissed as it is well established there is no private cause of action for damages under the Pennsylvania Constitution. (Doc. 11, pp. 9-10). Defendants argue that to the extent Plaintiff seeks injunctive relief for this claim, he has not alleged he is likely to suffer future injury from the alleged illegal conduct. (Doc. 11, p. 10). Plaintiff responds that Defendants are not entitled to sovereign immunity because they were acting outside the scope of their employment. (Doc. 20, pp. 10-12). In reply, Defendants reassert their initial arguments and note that they are not making a sovereign immunity argument and so Plaintiff's argument is misplaced. (Doc. 22, pp. 11-12).

As to Plaintiff's request for money damages for his claim under the Pennsylvania Constitution, we agree with Defendants. "Pennsylvania has not recognized a private right of action for monetary damages based upon violations of its Constitution."[51] Accordingly, to the extent Plaintiff seeks monetary damages for this claim Defendants' motion will be granted and this claim dismissed.

---

[51] *Gibson v. SCI Coal Twp. Med. Dep't*, No. 1:22-CV-00618, 2023 WL 2390676, at *9-10 (M.D. Pa. Mar. 7, 2023) (collecting Pennsylvania cases, Third Circuit cases and Pennsylvania district court cases).

Plaintiff also requests injunctive relief in the form of an order "enjoining Defendants from engaging in the future in the conduct identified in the Complaint as violative of . . . the cognate provisions of the Pennsylvania Constitution." (Doc. 1, p. 60). We find that Plaintiff does not have standing for his claim for injunctive relief.

> As the Supreme Court "has recognized, a person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." *TransUnion LLC*, 594 U.S. at 435, 141 S.Ct. 2190. "Where the plaintiff seeks injunctive relief, the allegation of a risk of future harm alone can qualify as concrete as long as it 'is sufficiently imminent and substantial.' " *Clemens*, 48 F.4th at 155.

Here, Plaintiff has not pleaded a real and immediate threat of future injury in his complaint. Plaintiff's allegations focus on past illegal conduct. He does not allege how he is in a real and immediate threat of injury by that same past illegal conduct by the named Defendants. Thus, he does not have standing to seek injunctive relief. Accordingly, to the extent Plaintiff seeks injunctive relief for this claim Defendants' motion will be granted and this claim dismissed without prejudice.[52]

---

[52] "Because the absence of standing leaves the court without subject matter jurisdiction to reach a decision on the merits, dismissals 'with prejudice' for lack of standing are generally improper." !*Cottrell v. Alcon Lab'ys*, 874 F.3d 154, 164 n.7 (3d Cir. 2017).

### H.    PLAINTIFF'S DERIVATIVE CLAIMS

Finally, Plaintiff brings claims for conspiracy pursuant to § 1983, supervisory liability pursuant to § 1983, conspiracy pursuant to 42 U.S.C. § 1985, failure to prevent under 42 U.S.C. §§ 1985 and 1986, and a state civil conspiracy claim (collectively "derivative claims"). (Doc. 1, ¶¶ 141-172, 212-229, 235-237). Defendants argue these claims should be dismissed because all of the substantive claims underlying the derivative claims should be dismissed. Plaintiff disagrees. We agree with Defendants in part.

Where a plaintiff "has not alleged a deprivation of a constitutional or federal statutory right or privilege, there can be no civil conspiracy to commit an unlawful act under § 1983."[53] To state a successful § 1985 claim, Plaintiff "first must establish a violation of their constitutional rights[.]"[54] And where a Plaintiff fails to allege a violation of § 1985, "the complaint cannot state a claim under § 1986."[55] Further, where there is no underlying constitutional violation, "it follows that any possible supervisory liability claim cannot stand."[56] Finally, under Pennsylvania law, a

---

[53] *Tomko v. Baldwin Borough*, No. 21-2593, 2022 WL 1772988, at *2 (3d Cir. June 1, 2022).
[54] *Papaiya v. City of Union City*, 238 F. App'x 848, 851 (3d Cir. 2007) (citing *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 805 (3d Cir. 2001)).
[55] *Foskey v. Rendell*, 261 F. App'x 428, 430 (3d Cir. 2008) (citing !*Clark v. Clabaugh*, 20 F.3d 1290, 1295 (3d Cir. 1994)).
[56] *Leisure v. Lancaster Cnty. Prison*, 750 F. App'x 89, 92 n.3 (3d Cir. 2018).

"conspiracy claim will not lie without a valid underlying civil claim."[57] It is thus clear that, to the extent Plaintiff's underlying claims are dismissed, Defendants are correct that the derivative claims must be dismissed. However, not all of Plaintiff's underlying claims are being dismissed. Defendants' only argument for the dismissal of Plaintiff's derivative claims is that the dismissal of all substantive claims requires dismissal of all these derivative claims. Therefore, because not all of Plaintiff's underlying claims are being dismissed, not all of Plaintiff's derivative claims can be dismissed. Accordingly, Defendants' motion will be granted insofar as it seeks dismissal of Plaintiff's derivative claims based on his false arrest and false imprisonment claims pursuant to § 1983 and Pennsylvania law, his malicious prosecution § 1983 and state law claims to the extent they relate to the two summary offenses he pleaded guilty to, his § 1983 procedural due process claim, and his equal protection claims pursuant to § 1983 and § 1981. The motion will be denied insofar as it seeks dismissal of Plaintiff's derivative claims based on his claims for malicious prosecution on the DUI charge pursuant to § 1983 and Pennsylvania law, and his unreasonable seizure claim pursuant to § 1983.

## I.    CLAIMS REMAINING AFTER THE MOTION TO DISMISS

For the ease of the parties and the Court, the following claims remain after the resolution of Defendants' motion to dismiss (Doc. 10):

---

[57] *Rock v. Rangos*, 61 A.3d 239, 249 (Pa. Super. Ct. 2013).

(1)    A 42 U.S.C. § 1983 claim for malicious prosecution arising out of Plaintiff's DUI charge against Penhorwood and Dressler (Count III);

(2)    A 42 U.S.C. § 1983 supervisory liability claim relating to the alleged malicious prosecution of Plaintiff on the DUI charge against Evanchik, Paris, Kline, D'Ambrosio and Getz (Count V);

(3)    A 42 U.S.C. § 1983 claim for failure to intervene relating to the alleged malicious prosecution of Plaintiff on the DUI charge against Dressler (Count VII);

(4)    A 42 U.S.C. § 1983 claim for the unreasonable seizure of Plaintiff's vehicle against all Defendants (Count VIII);

(5)    A 42 U.S.C. § 1983 conspiracy claim relating to the alleged malicious prosecution of Plaintiff on the DUI charge and the alleged unreasonable seizure of Plaintiff's vehicle against Penhorwood and Dressler (Count IV);

(6)    A 42 U.S.C. § 1985 conspiracy claim relating to the alleged malicious prosecution of Plaintiff on the DUI charge and the alleged unreasonable seizure of Plaintiff's vehicle against all Defendants (Count X);

(7)    A 42 U.S.C. §§ 1985 and 1986 failure to prevent claim relating to the alleged malicious prosecution of Plaintiff on the DUI charge against all Defendants (Count XI); and

(8)    A state law claim for malicious prosecution arising out of Plaintiff's DUI charge against Penhorwood and Dressler (Count XIII);

(9)    A state law civil conspiracy claim relating to the alleged malicious prosecution of Plaintiff on the DUI charge against Penhorwood and Dressler (Count XIV).

## V.    CONCLUSION

For the reasons stated above, it will be ordered that:

(1)    Plaintiff's motion to take judicial notice (Doc. 21) will be DENIED.

(2)    Defendants' motion to dismiss (Doc. 10) will be GRANTED in part and DENIED in part as follows:

      a.    Defendants' motion to dismiss (Doc. 10) will be GRANTED insofar as it seeks the dismissal of:

            i.    Plaintiff's 42 U.S.C. § 1983 claim for false arrest;

            ii.    Plaintiff's 42 U.S.C. § 1983 claim for false imprisonment;

            iii.    Plaintiff's 42 U.S.C. § 1983 malicious prosecution claim EXCEPT to the extent it relates to Plaintiff's DUI charge;

            iv.    Plaintiff's 42 U.S.C. § 1983 conspiracy claim EXCEPT to the extent it relates to Plaintiff's malicious prosecution claim on his DUI charge and Plaintiff's unreasonable seizure claim relating to the seizure of his vehicle;

            v.    Plaintiff's 42 U.S.C. § 1983 supervisory liability claim EXCEPT to the extent it relates to Plaintiff's malicious prosecution claim on his DUI charge;

            vi.    Plaintiff's 42 U.S.C. § 1983 equal protection claim;

            vii.    Plaintiff's 42 U.S.C. § 1983 failure to intervene claim EXCEPT to the extent it relates to Plaintiff's malicious prosecution claim on his DUI charge;

            viii.    Plaintiff's 42 U.S.C. § 1983 procedural due process claim;

            ix.    Plaintiff's 42 U.S.C. § 1981 claim;

            x.    Plaintiff's 42 U.S.C. § 1985 claim EXCEPT to the extent it relates to Plaintiff's malicious prosecution claim on his DUI charge and Plaintiff's

unreasonable seizure claim relating to the seizure of his vehicle;

xi.    Plaintiff's 42 U.S.C. §§ 1985 and 1986 claim for failure to prevent EXCEPT to the extent it relates to Plaintiff's malicious prosecution claim on his DUI charge;

xii.    Plaintiff's state law false arrest and false imprisonment claim;

xiii.    Plaintiff's state law malicious prosecution claim EXCEPT to the extent it relates to Plaintiff's DUI charge; and

xiv.    Plaintiff's state constitutional violations claim with prejudice to Plaintiff's request for monetary relief and without prejudice to Plaintiff's request for injunctive relief.

xv.    Plaintiff's state law civil conspiracy claim EXCEPT to the extent it relates to the alleged malicious prosecution of Plaintiff on the DUI charge.

b.    Defendants' motion to dismiss (Doc. 10) will be DENIED insofar as it seeks the dismissal of:

i.    Plaintiff's 42 U.S.C. § 1983 claim for malicious prosecution relating to Plaintiff's DUI charge;

ii.    Plaintiff's 42 U.S.C. § 1983 conspiracy claim relating to the alleged malicious prosecution of Plaintiff on the DUI charge and the alleged unreasonable seizure of Plaintiff's vehicle;

iii.    Plaintiff's 42 U.S.C. § 1983 supervisory liability claim relating to the alleged malicious prosecution of Plaintiff on the DUI charge;

iv.   Plaintiffs 42 U.S.C. § 1983 failure to intervene claim relating to the alleged malicious prosecution of Plaintiff on the DUI charge;

v.    Plaintiff's 42 U.S.C. § 1983 unreasonable seizure claim relating to the seizure of Plaintiff's vehicle;

vi.   Plaintiff's 42 U.S.C. § 1985 conspiracy claim relating to the alleged malicious prosecution of Plaintiff on the DUI charge and the alleged unreasonable seizure of Plaintiff's vehicle;

vii.  Plaintiff's 42 U.S.C. §§ 1985 and 1986 failure to prevent claim relating to the alleged malicious prosecution of Plaintiff on the DUI charge;

viii. Plaintiff's state law malicious prosecution claim relating to Plaintiff's DUI charge; and

ix.   Plaintiff's state law civil conspiracy claim relating to the alleged malicious prosecution of Plaintiff on the DUI charge.

(3)   An appropriate order will issue.


Date: June 6, 2025                    BY THE COURT

                                      _s/William I. Arbuckle_
                                      William I. Arbuckle
                                      U.S. Magistrate Judge